1
2
3
4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7

UNITED STATES OF AMERICA,

Case No. 2:16-cr-00046-PAL-GMN

8

Plaintiff,

**ORDER**

9

v.

**and**
**REPORT OF FINDINGS AND**

DAVE H. BUNDY,

**RECOMMENDATION**

10

Defendant.

(Mot. Dismiss – ECF No. 746)

11

12          Before the court is Defendant Dave H. Bundy's ("Dave Bundy") Motion to Dismiss (ECF

13   No. 746), which was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB

14   1-4 of the Local Rules of Practice.  The court has considered the motion, Bundy's Motion to Seal

15   (ECF No. 758), the sealed Notice of Manual Filing (ECF No. 759), the Government's Response

16   (ECF No. 924), and Bundy's Reply (ECF No. 993).  Defendants Micah McGuire, Mel Bundy, and

17   Joseph O'Shaughnessy filed Motion for Joinder (ECF Nos. 791, 814, 820) to Bundy's Motion.

18                                        **BACKGROUND**

19   **I.       The Indictment**

20          Defendant Dave Bundy and 18 co-defendants are charged in a Superseding Indictment

21   (ECF No. 27) returned March 2, 2016.  Dave Bundy is charged in 12 counts with:

22   •   Count One – Conspiracy to commit an offense against the United States in violation of 18
         U.S.C. § 371.  This charge arises from conduct that allegedly occurred sometime between
23       March of 2014 and March 2, 2016.

24   •   Count Two – Conspiracy to impede or injure a federal officer in violation of 18 U.S.C.
         § 372.  This charge arises from conduct that allegedly occurred sometime between March
25       of 2014 and March 2, 2016.

26   •   Count Three – Use and carry of a firearm in relation to a crime of violence in violation of
         18 U.S.C. § 924(c) and § 2.  This charge arises from conduct that allegedly occurred
27       sometime between March of 2014 and March 2, 2016.

28

1

- Count Five – Assault on a federal officer in violation of 18 U.S.C. § 111(a)(1), (b) and § 2. This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Six – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Eight – Threatening a federal law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B) and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Nine – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Ten – Obstruction of the due administration of justice in violation of 18 U.S.C. § 1503 and § 2.  This charge arises from conduct that allegedly occurred on April 6, 2014.

- Count Twelve – Obstruction of the due administration of justice in violation of 18 U.S.C. § 1503 and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Fourteen – Interference with interstate commerce by extortion in violation of 18 U.S.C. § 1951 and § 2.  This charge arises from conduct that allegedly on April 12, 2014.

- Count Fifteen – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Sixteen – Interstate travel in aid of extortion in violation of 18 U.S.C. § 1952 and § 2.  This charge arises from conduct that allegedly occurred sometime between April 5, 2014 and April 12, 2016.

The Superseding Indictment (ECF No. 27) in this case arises out of a series of events related to a Bureau of Land Management ("BLM") impoundment of Cliven Bundy's cattle following a two-decade-long battle with the federal government.  Beginning in 1993, Cliven Bundy continued to graze cattle on land commonly referred to as the "Bunkerville Allotment" without paying required grazing fees or obtaining required permits.  The United States initiated civil litigation against Cliven Bundy in 1998 in the United States District Court for the District of Nevada.  The court found that Cliven Bundy had engaged in unauthorized and unlawful grazing of his livestock on property owned by the United States and administered by the Department of the Interior through the BLM.  The court permanently enjoined Cliven Bundy from grazing his livestock on the Allotment, ordered him to remove them, and authorized the BLM to impound any unauthorized cattle.  Bundy did not remove his cattle or comply with the court's order and injunction. The United States went back to court.  Subsequent orders were entered in 1999 and

2013 by different judges in this district permanently enjoining Bundy from trespassing on the Allotment and land administered by the Nevada Park Service ("NPS") in the Lake Mead National Recreation Area,[1] ordering Bundy to remove his cattle, and explicitly authorizing the United States to seize, remove, and impound any of Bundy's cattle for future trespasses, provided that written notice was given to Bundy.

On February 17, 2014, the BLM entered into a contract with a civilian contractor in Utah to round up and gather Bundy's trespass cattle. BLM developed an impoundment plan to establish a base of operations on public lands near Bunkerville, Nevada, about 7 miles from the Bundy ranch in an area commonly referred to as the Toquop Wash. On March 20, 2014, BLM also entered into a contract with an auctioneer in Utah who was to sell impounded cattle at a public sale. Bundy was formally notified that impoundment operations would take place on March 14, 2014. The following day, Bundy allegedly threatened to interfere with the impoundment operation by stating publicly that he was "ready to do battle" with the BLM, and would "do whatever it takes" to protect "his property." The superseding indictment alleges that after being notified that BLM intended to impound his cattle, Bundy began to threaten to interfere with the impoundment operation, and made public statements he intended to organize people to come to Nevada in a "range war" with BLM and would do whatever it took to protect his cattle and property.

The superseding indictment alleges that, beginning in March 2014, the 19 defendants charged in this case planned, organized, conspired, led and/or participated as followers and gunmen in a massive armed assault against federal law enforcement officers to threaten, intimidate, and extort the officers into abandoning approximately 400 head of cattle owned by Cliven Bundy. The removal and impoundment operation began on April 5, 2014. On April 12, 2014, defendants and hundreds of recruited "followers" executed a plan to recover the cattle by force, threats, and intimidation. Defendants and their followers demanded that officers leave and abandon the cattle and threatened to use force if the officers did not do so. The superseding indictment alleges armed gunmen took sniper positions behind concrete barriers and aimed their assault rifles at the officers.

---

[1] By 2012, Bundy's cattle had multiplied and he also began grazing his cattle on land administered by the NPS in the Lake Mead National Recreation Area without obtaining grazing permits or paying grazing fees.

Defendants and their followers outnumbered the officers by more than 4 to 1, and the potential firefight posed a threat to the lives of the officers, as well as unarmed bystanders which included children.  Thus, the officers were forced to leave and abandon the impounded cattle.

After the April 12, 2014 confrontation with federal officers, the superseding indictment alleges that the leaders and organizers of the conspiracy organized armed security patrols and check points in and around Cliven Bundy's Bunkerville ranch to deter and prevent any future law enforcement actions against Bundy or his co-conspirators, and to protect Bundy's cattle from future law enforcement actions.

## II.   The Parties' Positions

### A. The Motion to Dismiss

The motion to dismiss contains a long statement of facts outlining Dave Bundy's view of the "Bunkerville protest."  In it, Dave Bundy states that on April 6, 2014, he traveled from his home in Delta, Utah, to the Bundy ranch in Riverside, Nevada, to give his mother flowers for her birthday.  He traveled on Nevada State Route 170 which was the only point of egress from the ranch.  On April 6, 2014, the BLM had attempted to close the state highway by posting signs that the highway was temporarily closed.  BLM arrived with agents dressed as paramilitary officers in SWAT gear accompanied with contract cowboys who were using a helicopter to round up Cliven Bundy's herd of cattle.  Helicopter roundups are considered inhumane. Family members witnessed backhoes being used and believed the BLM was killing cattle and burying them in mass graves.

The motion claims that at the site, law enforcement officers found themselves confronted by protestors who had gathered in protest of BLM's actions in herding Cliven Bundy's cattle. Dave Bundy maintains that it was law enforcement's heavy handed militarized conduct, and videos, photographs, and descriptions of the incidents that "went viral" that caused the protestors to arrive at the scene.  The videos of the BLM's actions, rather than any action taken by the Bundy brothers, were the catalyst for hundreds of protestors arriving on site.  Dave Bundy also claims that he was never armed at any point during the protest.  Additionally, none of his brothers solicited the protestors, who were armed and exercising their Second Amendment rights.  The Bundy family posted signs of no alcohol, expressly instructing protestors not to bring any rifles.

4

The motion argues that Dave Bundy has respect for the federal government.  He has a flight instructor license issued by the Federal Aviation Administration ("FAA"), which required an extensive background check.   Federal regulations require the Transportation Security Administration ("TSA") to notify the FAA if they believe any individual credentialed by the FAA poses a threat.  Additionally, Dave personally signed for a Small Business Administration ("SBA") loan in 2008, and repaid the loan in June 2014, at a time when he was not making much income.  Finally, on July 22, 2015, Dave Bundy's commercial driver's license was renewed by the federal government.  All of these things demonstrate that Dave Bundy respects the federal government.

The motion argues that the superseding indictment should be dismissed because it is insufficient, overbroad, vague, ambiguous, and uncertain.  It uses boilerplate language stating threadbare legal conclusions devoid of specific factual allegations and fails to specify which defendants allegedly committed which acts.   Bundy claims the superseding indictment is constitutionally inadequate and should be dismissed because it leaves a reasonable person to guess what is alleged.  The motion also argues that evidence the government chose not to disclose demonstrates Dave Bundy did not commit a crime, and directly contradicts the threadbare conclusory allegations of the superseding indictment.

Dave Bundy also asserts the indictment should be dismissed based on outrageous government conduct.  The conduct of the government in this case was so outrageous it constitutes a due process violation and is grounds for dismissal.  The motion claims that the defendants were not active participants in any crime, the alleged criminal enterprise was not ongoing at the time the government got involved, the defendants would have been unable to commit the alleged crimes without the government's involvement, and government agents themselves engaged in misconduct.

Finally, the motion argues that at a minimum, the 18 U.S.C. § 924(c) counts should be dismissed against Dave Bundy because he did not use or carry a firearm, or conspire with anyone who did carry a firearm.  Nothing in the discovery produced by the government to date establishes that Dave ever possessed a weapon or "brandished" a weapon as defined by § 924(c)(4).  The motion is supported by a series of exhibits that were submitted manually and under seal supporting

Dave Bundy's defense. For all of these reasons, he argues, all of the charges against Dave Bundy should be dismissed.

### B. The Government's Response

The government's response reiterates its version of the background of the events leading up to the charges in this case. On the merits, the government argues that the indictment alleges the elements of each of the offenses charged by tracking the language of the relevant statute. Bundy is therefore on sufficient notice of the charges against him. Bundy's motion cites no authority to support his argument that the conspiracy count is insufficient because it fails to inform him "how, when, and where" he recruited gunmen, threatened officers, or engaged in an armed assault. Controlling authority requires only that the conspiracy charge recite the elements of the offense, accompanied by the tracking language in the conspiracy statute. The Ninth Circuit has held that the use of barebones information employing the statutory language is common and entirely permissible as long as the statute itself sets forth fully, directly, and clearly, all essential elements of the crime charged. Both conspiracy counts comply with the standard.

The government also argues that although Bundy complains that the 63-page superseding indictment is so vague, ambiguous, and uncertain that it leaves a reasonable person to guess as to what is alleged, he has not articulated specifically which of the 12 counts against him are deficient. He has not shown that any count in the indictment is deficient in alleging necessary elements of the offenses charged. Citing *United States v. Black*, 733 F.3d 294, 302 (9th Cir. 2013), the government also contends that the motion does not establish the government engaged in conduct "so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction." At most, Bundy claims that the Special Agent in Charge ("SAC") and Assistant Sheriff approached him in an effort to diffuse the violence at the impoundment site on April 12th. However, Bundy does not claim, nor can he, that the SAC created the violence at the impoundment site or instigated the assault and extortion to "set up Bundy." It is hardly shocking that, even under Bundy's theory of the evidence, the SAC would seek assistance to help diffuse the violence.

/ / /

Finally, the government argues that the § 924(c) counts are sufficient because the indictment clearly charges Bundy with violations as either an aider and abettor, or as a co-conspirator. Both are recognized theories of criminal liability under *United States v. Pinkerton*, 328 U.S. 640, 647 (1946), which holds a person is vicarious liable for reasonable and foreseeable substantive crimes committed by a co-conspirator in furtherance of the conspiracy. The court should therefore deny his motion to dismiss in its entirety and all joinders.

### C. Dave Bundy's Reply

Citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the reply argues that the Supreme Court has held that pleadings must provide more than labels and conclusions and a formulaic recitation of the elements of a cause of action. Threadbare recitals of the elements of a cause of action are insufficient. Although these are civil cases, an accused in a criminal case should be at least as entitled as a defendant in a civil case to be advised of the charging documents and the factual basis for the charges filed against him.

The reply cites *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007), for the proposition that the Supreme Court has found there are crimes that must be charged with greater specificity. The court should apply the *Twombly* and *Iqbal* pleading standards to safeguard the rights of an accused in criminal cases because a defendant in a criminal case has a far greater need than any civil defendant to secure detailed factual allegations from the government's initial pleading. Civil litigants can readily flush out the plaintiff's allegations by taking his or her deposition, submitting written interrogatories, or taking depositions of non-parties. None of these discovery devices are available to defendants in criminal prosecutions. Applying the *Twombly* and *Iqbal* standards, the conspiracy allegations in the superseding indictment are insufficient since the allegations that the defendants conspired are not supported by underlying factual allegations, but merely conclusions of law.

/ / /

/ / /

/ / /

/ / /

## DISCUSSION

**I.    Applicable Legal Principles**

**A.  Rule 12 of the Federal Rules of Civil Procedure**[2]

Pursuant to Rule 12, a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Rule 12(b)(3) specifies the motions which must be made before trial. Among them is a motion to dismiss for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(v). A pretrial motion to dismiss a criminal case is appropriate when it involves questions of law rather than fact. *United States v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987).

In ruling on a pretrial motion to dismiss, the district court is "bound by the four corners of the indictment." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014); *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) ("On a motion to dismiss an indictment for failure to state an offense the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged."). The court should not consider evidence that does not appear on the face of the indictment. *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)). Thus, a defendant is not entitled to a pre-trial evidentiary hearing to obtain a preview of the government's evidence and an opportunity to cross-examine its witnesses. *Id.* at 669 ("A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence.").

In determining whether a cognizable offense has been charged, the court does not consider whether the government can *prove* its case, only whether accepting the facts as alleged in the indictment as true, a crime has been alleged. *United States v. Milovanovic*, 678 F.3d 713, 717 (9th Cir. 2012). Rule 12 motions cannot be used to determine "general issues of guilt or innocence," which "helps ensure that the respective provinces of the judge and jury are respected." *Boren*, 278 F.3d at 914 (citation omitted). A defendant may not challenge a facially-sufficient indictment on the ground that the allegations are not supported by adequate evidence. *Jensen*, 93 F.3d at 669 (citation omitted). However, the court may dismiss an indictment if "it fails to recite an essential

---

[2]  All references to a "Rule" or the "Rules" in this Order refer to the Federal Rules of Criminal Procedure unless otherwise stated.

element of the charged offense." *United States v. Ezeta*, 752 F.3d 1182, 1184 (9th Cir. 2014) (citing *United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005)).

### B.  Sufficiency of an Indictment

"An indictment 'must be a plain, concise and definite written statement of the essential facts constituting the offense charged'." *United States v. Forrester*, 616 F.3d 929, 940 (9th Cir. 2010) (quoting Fed. R. Crim. P. 7(c)(1)).  An indictment is "sufficient if it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

An indictment is generally sufficient if it sets forth the offense in the words of the statute itself as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all of the elements necessary to constitute the offenses intended to be punished." *Hamling*, 418 U.S. at 117.  The test of an indictment's sufficiency "is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *United States v. Livingston*, 725 F.3d 1141, 1146–47 (9th Cir. 2013) (citation omitted).  The Ninth Circuit has held:

> An indictment will withstand a motion to dismiss "if it contains the elements of the charged offense in sufficient detail (1) to enable the defendant to prepare his defense; (2) to ensure him that he is being prosecuted on the basis of the facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge."

*United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994) (quoting *United States v. Bernhardt*, 840 F.2d 1441, 1445 (9th Cir. 1988)).  The sufficiency of an indictment is determined by "whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, not whether the government can prove its case." *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993) (quoting *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982)).  The court will look at the indictment "as a whole, include facts which are necessarily implied, and

/ / /

1    construe it according to common sense." *United States v. Kaplan*, 836 F.3d 1199, 1216 (9th Cir.

2    2016) (citing *Buckley*, 689 F.2d at 899).

3         Applying these standards, the court finds he superseding indictment adequately alleges the

4    offenses charged.   In deciding a motion to dismiss under Rule 12 the court must accept the

5    allegations of the indictment as true.   The majority of Bundy's arguments center on his defense

6    theory of the case.   He argues he is a law abiding family man who respects the federal government

7    as evidenced by his FAA pilot license, commercial driving license and repayment of a federal loan

8    obligation.   These all indicate he has consistently complied with federal law and respected federal

9    authority.   He also argues he cannot be convicted of § 924(c) charges because he did not carry or

10   brandish a weapon at any point or conspire with anyone who did.   However, clearly, he can be

11   charged as an aider and abettor and co-conspirator even if he did not carry or brandish a firearm.

12   *See, e.g.*, *Pinkerton v. United States*, 328 U.S. 640 (1946) (holding a defendant could be held liable

13   for a substantive offense committed by a co-conspirator as long as the offense occurred within the

14   course of the conspiracy, was within the scope of the agreement, and could reasonably have been

15   foreseen as a necessary or natural consequence of the unlawful agreement).

16        Additionally, Bundy makes fact based arguments that on he was enlisted as a peacekeeper,

17   to keep things calm, both by the BLM SAC and Clark County Under Sheriff, now Sheriff,

18   Lombardo, on April 12, 2014.   All of these are matters for the jury to determine.   In ruling on a

19   motion to dismiss the court may not rely on facts or evidence outside those alleged in the

20   indictment, decide whether the government can prove its case, or whether Bundy has a meritorious

21   fact based defense.

22        The motion to dismiss also raises creative arguments based on the pleading requirements

23   in civil cases outlined by the Supreme Court in *Iqbal* and *Twombley*.   Bundy is correct that the

24   Supreme Court has held that a defendant in a civil case may file a motion to dismiss pursuant to

25   Rule 12(b)(6) of the Federal Rules of Civil Procedure raising arguments that a complaint should

26   be dismissed based on mere "labels and conclusions, and a formulaic recitation of the elements of

27   a cause of action."   *Twombley*, 550 U.S. at 555.   While creative, this argument is unavailing.   Any

28   civil plaintiff may file a complaint against a defendant by paying a filing fee or receiving

permission to file a complaint *in forma pauperis*.  By contrast, the Fifth Amendment to the United States Constitution guarantees that a defendant may not be charged with felony offenses in a criminal indictment unless the Grand Jury finds probable cause, based on the evidence presented to it, that the defendant has committed the offenses charged.  Historically, the grand jury has been regarded as a "primary security to the innocent against hasty, malicious and oppressive prosecution; it serves the valuable function in our society of standing between the accuser and the accused . . . to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and ill will."  *United States v. Caruto*, 663 F. 3d. 394, 398 (9th Cir. 2011) (citations and internal quotations omitted).

Bundy's citation to the Supreme Court's decision in *Resendiz-Ponce* is equally unavailing.  There, the defendant was charged and convicted with attempted unlawful reentry into the United States after having been previously deported.  He appealed his conviction arguing the indictment was insufficient and should have been dismissed because it failed to allege as an essential element, an overt act, or facts constituting an overt act.  The government agreed that he could not be convicted of attempted unlawful reentry without proof of an overt act.  However, it argued the indictment was sufficient because it "implicitly alleged" that the defendant engaged in the necessary overt act "simply by alleging that he 'attempted to enter the United States.'"  549 U.S at 107.  The Supreme Court agreed, reversing the Ninth Circuit's decision to the contrary.  *Id*.  The Supreme Court held that it was enough for the indictment "to point out the relevant criminal statute" and allege that on or about the date charged the defendant "attempted to enter the United States of America at, or near, San Luis in the District of Arizona."  *Id*. at 108.

### C.  Outrageous Government Conduct

Dismissal of an indictment for outrageous government conduct is rooted in the due process clause of the Fifth Amendment of the Constitution, which provides that "no person shall . . . be deprived of life, liberty, or property without due process of law."  U.S. Const. amend. V.  In *United States v. Russell*, 411 U.S. 423, 431–32 (1973), the Supreme Court held that outrageous government conduct occurs when the actions of law enforcement officers or informants are "so

/ / /

1   outrageous that due process principles would absolutely bar the government from invoking judicial

2   processes to obtain a conviction."

3          The Ninth Circuit has held that dismissal of an indictment for outrageous government

4   conduct is "limited to extreme cases" in which the defendant can demonstrate that the

5   government's conduct "violates fundamental fairness" and is "so grossly shocking and so

6   outrageous as to violate the universal sense of justice." *United States v. Stinson*, 647 F.3d 1196,

7   1209 (9th Cir. 2011).  This is an "extremely high standard." *United States v. Black*, 733 F.3d 294,

8   302 (9th Cir. 2013) (citing *United States v. Garza-Juarez*, 992 F.2d 896, 904 (9th Cir. 1993)).

9   There are only two federal appellate court decisions which have reversed convictions for

10   outrageous government conduct. *Id.* (citing *United States v. Twigg*, 588 F.2d 373 (3rd Cir. 1978);

11   *Greene v. United States*, 454 F.2d 783 (9th Cir. 1971)).

12          Because there is no bright line rule establishing when law enforcement's conduct goes from

13   acceptable to outrageous, each case must be resolved on its own facts, considering the totality of

14   the circumstances. *Id.* at 302, 304.  The Ninth Circuit's decisions prior to *Black* provided some

15   guidance about when law enforcement conduct crosses the line between acceptable and

16   outrageous.  In *United States v. Williams*, 547 F.3d 1187, 1199 (9th Cir. 2008), the Ninth Circuit

17   held that it was outrageous for government agents to engineer and direct a criminal enterprise from

18   start to finish.  It is outrageous government conduct to use "excessive physical or mental coercion"

19   to convince an individual to commit a crime.  *United States v. McClelland*, 72 F.3d 717, 721 (9th

20   Cir. 1995).  It is outrageous for the government to generate new crimes "merely for the sake of

21   pressing criminal charges." *United States v. Emmert*, 829 F.2d 805, 812 (9th Cir. 1987).  It is not

22   outrageous for law enforcement to infiltrate a criminal organization, approach people who are

23   already involved in or contemplating a criminal act, or to provide necessary items to a conspiracy.

24   *United States v. So*, 755 F.2d 1350, 1353 (9th Cir. 1985).  It is also not outrageous for the

25   government to "use artifice and stratagem to ferret out criminal activity." *United States v. Bogart*,

26   729 F.2d 1428, 1438 (9th Cir. 1984).

27          Both sides rely on the Ninth Circuit's 2013 decision in *United States v. Black*, 733 F.3d

28   294, to support their arguments.  In *Black*, the Ninth Circuit found that the reverse sting challenged

1    on appeal fell "within the bounds of law enforcement tactics that have been held reasonable." *Id.*

2    at 302.  A "reverse sting" is a term applied when the government initiates the criminal conduct,

3    setting up a fictitious crime, and arresting criminals as they begin to carry out what they believe is

4    a real crime. *Id.* at 298 n.1.

5           Although the court upheld the conviction, it was troubled by two aspects of the fictional

6    sting operation and how it came about in the first place.  First, the court of appeals was concerned

7    that the defendants were convicted of conspiracy to possess cocaine with intent to distribute and

8    use of firearms in furtherance of a drug trafficking crime that resulted from an operation created

9    and staged by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").  *Id.* at 302–03.

10   An ATF undercover officer used a confidential government informant ("CI") and invented the

11   entire scenario, the need for weapons and a "crew," and the amount of cocaine involved.  The court

12   found that the facts of the case suggested that the defendants were responding to the government's

13   script, and that their only overt actions involved showing up at meetings, arriving at a parking lot

14   with four hidden, loaded weapons, and driving to the storage warehouse where they were arrested.

15   The defendants' actions corroborated that they intended to carry out these robberies, but also that

16   they were responding to the scheme created by the government.

17          The *Black* court's second concern with the reverse sting operation was how the government

18   recruited the defendants.  The ATF did not infiltrate a suspected crew of home invasion robbers or

19   seduce persons known to have actually engaged in these types of crimes.  Rather, the ATF used a

20   CI to find individuals willing to commit a home invasion.  The CI testified that he carried out his

21   mission by going to bars in "bad" areas where persons engaged in criminal activity were likely to

22   gather.

23          In upholding the convictions the Ninth Circuit applied various factors its prior cases had

24   found relevant to determine whether the government conduct was outrageous: (1) known criminal

25   characteristics of the defendants; (2) individualized suspicion of the defendants; (3) the

26   government's role in creating the crime of conviction; (4) the government's encouragement of the

27   defendants to commit the offense conduct; (5) the nature of the government's participation in the

28   offense conduct; and (6) the nature of the crime being pursued and the necessity for the actions

13

1  taken in light of the nature of the criminal enterprise at issue.  *Id*. at 303–04.  However, the Ninth

2  Circuit stated that these factors were not a "formulistic checklist," but a means to focus the court's

3  "analysis of the totality of the circumstances."  *Id*. at 304.

4  *Black* and other cases seeking dismissal based allegations of outrageous government

5  conduct all involve undercover sting or reverse sting operations.  The common thread in these

6  cases is conduct by the government that the defense argues crosses the line between catching

7  criminals by giving them an opportunity to "take the bait," and government conduct that

8  manufactures a fictional crime from start to finish and supplies the targets with the means to

9  commit the offense, or pressures a defendant to commit a crime.  These cases simply have no

10  application to the offenses charged in this indictment, which stem from allegations the defendants

11  committed offenses against federal officers, agents, and employees who were engaged in an

12  impoundment operation pursuant to lawful federal court orders to seize and remove Cliven

13  Bundy's trespass cattle.

14  For these reasons explained,

15  **IT IS ORDERED** that:

16  1.  The Motion to Seal the Exhibits (ECF No. 758) is **GRANTED**.

17  2.  The Motions for Joinder (ECF Nos. 791, 814, 820) are **GRANTED** to the extent these

18  defendants may join in the legal arguments challenging the sufficiency of the

19  indictment, and outrageous conduct arguments, but **DENIED** with respect to Dave

20  Bundy's fact/conduct based defenses.

21  **IT IS RECOMMENDED** that Dave Bundy's Motion to Dismiss (ECF No. 746) be

22  **DENIED**.

23  DATED this 11th day of January, 2017.

25  PEGGY A. LEEN

26  UNITED STATES MAGISTRATE JUDGE