DANIEL G. BOGDEN
United States Attorney
District of Nevada
STEVEN W. MYHRE
NICHOLAS D. DICKINSON
NADIA J. AHMED
Assistant United States Attorneys
ERIN M. CREEGAN
Special Assistant United States Attorney
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
steven.myhre@usdoj.gov
nicholas.dickinson@usdoj.gov
nadia.ahmed@usdoj.gov
erin.creegan@usdoj.gov

*Attorneys for the United States*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff,<br><br>          v.<br><br>O. SCOTT DREXLER,<br>ERIC PARKER, and<br>STEVEN A. STEWART,<br><br>                   Defendants. | 2:16-CR-00046-GMN-PAL<br><br>**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT STEWART, PARKER, AND DREXLER'S OMNIBUS MOTION IN LIMINE (ECF No. 1332, 1340 and 1414)** |

**CERTIFICATION: This Response is timely filed.**

The United States, by and through the undersigned, respectfully submits its Response in Opposition to Defendant Stewart, Parker, and Drexler's Omnibus Motion in Limine (ECF No. 1332) which was joined by defendants Ricky Lovelien (ECF No. 1340) and Mel Bundy (ECF No. 1414). As discussed below, the

defendants' motion raises various issues, all of which are either meritless or moot. Accordingly, the motion should be denied.

## BACKGROUND

This is a conspiracy case arising from a massive assault against federal officers that occurred near co-defendant Cliven Bundy's ranch in Bunkerville, Nevada, on April 12, 2014. On March 2, 2016, a federal Grand Jury seated in the District of Nevada returned a Superseding Criminal Indictment ("SSI"), charging defendants Steven Stewart, Scott Drexler and Eric Parker, as well as 16 other defendants with, among other things, conspiring to assault federal officers, obstruct justice, extort federal officers, and use and brandish a firearm in relation to a crime of violence, and the substantive offenses that comprise the objects of the conspiracy, all in violation of Title 18, United States Code, Sections 371; 372; 111(a)(1) and (b); 1503; 1951; and 924(c).

On April 12, 2014, defendants Parker, Drexler and Stewart took up tactically superior positions over federal officers defending their operation base against a swarm of people sent there by Cliven Bundy to get his cattle, advancing toward the officers and refusing to comply with their orders to leave the area.  Defendants Parker, Drexler and Stewart were each armed with an assault rifle and were observed and documented taking positions of cover and concealment behind the jersey barriers on the I-15 bridge or either pointing or carrying their firearm in a ready position facing toward the officers:

![Steven Stewart and Scott Drexler on northbound I-15 bridge]

[Steven Stewart and Scott Drexler on northbound I-15 bridge]




[Scott Drexler on northbound I-15 bridge]





[Eric Parker on northbound I-15 bridge]

On March 3, 2016, Parker, Drexler and Stewart were arrested pursuant to arrest warrants issuing from the Superseding Indictment.  Shortly after their arrests, both Parker and Stewarts' firearms and ammunition were turned over to the FBI and booked into evidence.

4

Defendants are currently set to proceed to trial on February 6, 2017.  On January 18, 2017, defendants filed the instant motion seeking to preclude the use of various terms, reference to firearms seized post-arrest, and reference to the defendants' "militia" affiliations.

## LEGAL STANDARD

"Judges have broad discretion when ruling on motions in limine." *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1167 (D. Nev. 2014).  "However, a motion in limine should not be used to resolve factual disputes or weigh evidence." *Id.*  To obtain the exclusion of evidence under such a motion, a party must prove that the evidence is clearly inadmissible on all potential grounds.  *Id.* (citations and internal quotation marks omitted).  "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.* at 1168, *quoting Hawthorne Partners v. AT & T Tech., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993).

## ARGUMENT

Defendants raise a variety of issues in their omnibus motion.  However, they fail to meet the "high standard" required to exclude evidence, relying almost exclusively on an unreliable expert witness to bolster their argument or else providing little to no authority at all for their positions.

First, defendants seek to preclude the government from using the terms "gunmen," "snipers" and "assault rifles" because, they argue, such use would be

more prejudicial than probative under Federal Rule of Evidence 403 and improperly suggest that the defendants have "an inadmissible history" of prior bad acts under Federal Rule of Evidence 404(b).  Mot. at pp. 3-8.  However, the Court has already addressed the relevance of these terms in its January 6, 2017, Order regarding Defendant Payne's Motion to Strike Surplusage (ECF No. 1249).   The Court recognized the government's position that such terms are "plainly relevant and material" and that the government "intends to prove the propriety of using these terms" at trial.  *Id.* at p. 4.  In sum, the Court correctly stated that these terms "collectively form the core of the government's theory of prosecution – that a violent, multi-defendant conspiracy caused a violent armed assault and extortion."  *Id.* After carefully considering the parties' arguments, the Court reviewed the Superseding Indictment and only struck from it the term "lie," the phrase "and Used Deceit and Deception to Recruit Followers," and the phrase "and ill-gotten gain." *Id.* at pp. 6-7.  By striking these phrases while leaving the terms "gunman," "sniper" and "assault rifle" in place, the Court implicitly recognized that these terms are "necessary to establishing context for crimes . . . or any element of the offenses charged."  *Id.* at p. 6.  Given the Court's ruling, defendants' argument, based on nothing more than a proffered "expert witness's" statement that the defendants were not gunmen or trained snipers, must be rejected.

Additionally, as defendants themselves state, the term gunman is commonly defined as "a man armed with a gun…" Mot. at p. 4, citing *Merriam-Webster*'s *Dictionary*, www.merriam-webster.com/dictionary/gunman.   Just as the Court

Order states, the government intends to submit evidence that the defendants were armed with guns and as such were "gunmen."[1]  Similarly, the government intends to introduce evidence that the officers in the wash, based on their training and experience, perceived and described the defendants and others with weapons on the bridges to be acting like "snipers" or "sniper and spotter teams" and that the threat the officers felt on April 12 was in large part due to these sniper positions and sniper-like conduct by the gunmen defendants.  Accordingly, the motion should be denied.  *See Ragsdale v. Sidoti*, 5:12 CV 2484, 2015 WL 10986351, at *2 (N.D. Ohio 2015) (declining to exclude reference to defendant as "sniper," noting it would rule on the admissibility of evidence in the context of trial).

Defendants offer nothing to support their conclusory allegations that use of the terms "gunman," "sniper," and "assault rifle" would "improperly suggest" that the defendants have "an inadmissible history of bad acts."  Mot. at pp. 8-9.  As discussed above, the government intends to submit evidence that the defendants acted as gunmen and took up sniper positions using assault rifles on April 12, 2014.  The government does not intend to offer any evidence that the defendant acted as gunmen, snipers or utilized assault rifles prior their involvement in the charged conspiracies.  Accordingly, the defendants' argument on this point lacks merit and should be rejected.

---

[1] Courts have universally referred to defendants in violent crimes cases involving firearms as "gunman." *See e.g. United States v. Hartz*, 458 F.3d 1011, 1014 (9th Cir. 2006).     A Westlaw query shows the term gunman being used in 153 Ninth Circuit opinions and in 630 opinions from district courts in the Ninth Circuit.  The government was unable to identity a single case where a court excluded the term "gunman."

Moreover, what defendants really seek to do is exclude characterization of the case. To the extent reference to gunmen, snipers and assault rifles are inadmissible then characterizations regularly used by the defendants, including in the instant motion, such as protest, peaceful protest and protestors in referring to Bundy followers would be equally barred under such logic.

Defendants also seek to preclude use of the terms "III%ers," "militia," and "domestic terrorism" as more prejudicial than probative under FRE 403 because these groups have been described as "domestic terrorists" by former-Senator Harry Reid and others. Mot. at pp. 14-15. This is frivolous. Once again, the Court has ruled on this. ECF No. 1249. The term militia was significant to the defendants in the conspiracy case. The evidence the government will adduce at trial indicates that the Bundy family, Ryan Payne, Pete Santili and others put out calls for help and calls to arms to people and groups they described as "militia," including the III%ers group. Additionally, the government proffers that evidence will show that different campsites were provided near the Bundy Ranch, with some being described as "militia" camps. Finally, the evidence will show that the defendants and others describe the gunmen who supported the Bundys on April 12 as the "militia." Thus, the term militia is direct evidence of the criminal charges in this case. Additionally, although the government does not intend to prove the defendants were "domestic terrorists" nor will it seek to admit evidence that they were "domestic terrorists" or engaged in acts of "domestic terrorism" these terms may come in either through agents discussing their backgrounds or through the

defendants' self-description in various social media posts or other contexts, or through evidence wherein conspirators used this term to call others to arms. Absent the defendants' identification of specific documents, it is impossible for the Court to make a ruling at this stage. Accordingly, the Court should deny the motion with respect to these terms.

Defendants also seek to preclude admission of evidence regarding firearms, ammunition, and gear seized post-arrest that was not present on April 12, 2014. They provide a list of items they seek to exclude based on their expert witness's assertion that such items do not appear in any photographs. The Court should decline to exclude such items based solely on the defense expert's review of photographs at this early stage and instead determine whether evidence that emerges at trial provides a basis to conclude that any particular item was in a defendant's possession during the assault on April 12, 2014. *See Ragsdale*, 5:12 CV 2484, 2015 WL 10986351, at *2

Much of Stewart's motion relies on Mr. Alphrin's overbroad twelve-page report, which contains a host of inadmissible opinions regarding this case. The following are but a few examples:

- "I did not see assault rifles in the possession of the peacefully assembled civilians…."
- "Had the agents 'opened fire' on the women and children, as they promised to do, they would have had a combined capability of firing 33,900 rounds of ammunition, in the first minute."

- "The defendants were not fully trained, nor fully ready, for armed conflict."
- "It is obvious that the defendants, though they may have driven in the same automobile, did not form a scheme or cabal to prepare for battle"
- "There are certainly many photographs taken by the agents …. Which remain unseen."

Mr. Aphrin claims to know the mental states of everyone involved, including the defendants and their co-conspirators and apparently can discern what the defendants and law enforcement personally observed on April 12, 2014.  At best this is sheer speculation and conjecture and is not the proper basis for expert testimony under Rule 702.   The physical evidence that Mr. Aphrin examined was seized close to two years after April 12, 2014.  Mr. Aphrin has no idea what was or was not present on April 12, 2014.  Even assuming evidence would need to be depicted to be admissible, Mr. Aphrin admits that he did not review all of the evidence.

Finally, the motion raises several items the government does not intend to introduce.  The defendants seek to exclude mention of Jerad and Amanda Miller's presence at the Bundy Ranch in April 2014 and subsequent murder of two Las Vegas Metropolitan Police officers.  As an initial matter, the government has previously advised, most recently at the December 9, 2016 hearing, and maintains that it does not intend to reference the Millers' affiliation with the Bundys and their followers at trial unless somehow the defendants open the door to such subjects and even then the government would take the matter before the court before any

10

mention of the Millers.  Similarly, the government, in its case in chief, does not intend to introduce images of Scott Drexler holding a weapon or affiliating with militia groups other than on or about April 12, 2014 in its case in chief barring the defendants opening the door to such subjects.  Accordingly, the Court should deny the motion with respect to these subjects as moot.  *See Allstate Ins. Co. v. Nassiri*, No. 2:08-CV-369 JCM (GWF), 2013 WL 2393854, at *7 (D. Nev. May 29, 2013) (denying defendant's motion in limine as moot based on plaintiff's representation that he did not intend to introduce such evidence or argument); *United States v. Navarro*, No. C 07-5126 SBA (PR), 2012 WL 3580284, at *10 (N.D. Cal. Aug. 17, 2012) (same).

The defendants fail to establish that any of the terms or evidence they seek to exclude is irrelevant, more prejudicial than probative or implicates FRE 404(b). Alternatively, the issues they raise are moot as the government does not intend to introduce such evidence absent the defendants opening the door to these subjects.

/////
/////
/////
/////
/////
/////
/////
/////

## <u>CONCLUSION</u>

**WHEREFORE**, for all the foregoing reasons, the government respectfully requests that the Court enter an Order, denying defendant's Omnibus Motion in Limine and any related joinders.

**DATED** this 1st day of February, 2017.

Respectfully submitted,

DANIEL G. BOGDEN
United States Attorney

*//s//*

_____
STEVEN W. MYHRE
NICHOLAS D. DICKINSON
NADIA J. AHMED
Assistant United States Attorneys
ERIN M. CREEGAN
Special Assistant United States Attorney

*Attorneys for the United States*

## CERTIFICATE OF SERVICE

I certify that I am an employee of the United States Attorney's Office.  A copy of the foregoing **GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS OMNIBUS MOTION IN LIMINE (ECF No. 1332, 1340 and 1414)** was served upon counsel of record, via Electronic Case Filing (ECF).

**DATED** this 1st day of February, 2017

*/s/ Steven W. Myhre*
_____
STEVEN W. MYHRE
Assistant United State Attorney

13